Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| EL PUEBLO DE PUERTO RICO <br><br> *Recurrido* <br><br><br> v. <br><br><br> WALTER CASTILLO <br><br> *Peticionario* | KLCE202400280 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez <br><br> Caso Núm.: ISCR202300183-184 <br><br> Sobre: Art. 404 Ley de Sustancias Controladas Art. 6.05 Ley 168 |
|---|---|---|

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 8 de marzo de 2024.

Comparece ante nos el señor Walter Castillo (señor Castillo o peticionario) mediante *Petición de Certiorari* y *Moción Solicitando Paralización de los Procedimientos en Auxilio de Jurisdicción* presentadas el 6 de marzo de 2024. En su recurso, el peticionario solicita la revisión y revocación de la *Resolución* emitida el 16 de enero de 2024, notificada el 22 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. Mediante el referido dictamen, el foro primario declaró no ha lugar una *Moción en solicitud supresión de evidencia al amparo de la Regla 234 de las de Procedimiento Criminal* presentada por el peticionario.

Por los fundamentos que exponemos a continuación, **denegamos** la expedición del auto de *certiorari* y declaramos **no ha lugar** la *Moción Solicitando Paralización de los Procedimientos en Auxilio de Jurisdicción.*

Número Identificador
RES2024_____

**I.**

Conforme surge del expediente ante nuestra consideración, por hechos ocurridos el 23 de septiembre de 2022, el Ministerio Público presentó contra el señor Castillo dos denuncias por infracción al Artículo 404(a) de la Ley Núm. 4-1971, según enmendada, conocida como *Ley de Sustancias Controladas de Puerto Rico*[1] y una denuncia por infracción al Artículo 6.05 de la Ley Núm. 168-2019, según enmendada, conocida como la *Ley de Armas de Puerto Rico de 2020*[2]. En síntesis, al peticionario se le imputó poseer ilegalmente dos bolsitas de marihuana, una bolsita de cocaína y un arma de fuego sin tener licencia para ello[3].

El 13 de marzo de 2023, el TPI celebró la Vista Preliminar al amparo de la Regla 23 de las de Procedimiento Criminal[4], en la que determinó causa probable en uno de los cargos bajo el Artículo 404(a), en específico, posesión de marihuana, y el cargo por infracción al Artículo 6.05 de la Ley Núm. 168-2019[5]. El 24 de marzo de 2023, el Ministerio Público presentó las correspondientes acusaciones[6].

Posteriormente, el 10 de agosto de 2023, el señor Castillo presentó una *Moción en solicitud supresión de evidencia al amparo de la Regla 234 de las de Procedimiento Criminal*[7]. En dicha moción, alegó que la intervención llevada a cabo contra el peticionario fue realizada sin que mediara orden judicial previa, por lo cual, la evidencia ocupada fue obtenida ilegalmente. Además, arguyó que el agente Miguel Rodríguez Arocho (agente Rodríguez) intervino sin tener motivos fundados. Particularmente, sostuvo que el agente Rodríguez no tenía justa causa, ni motivos fundados para intervenir

---

[1] 24 LPRA sec. 2404.
[2] 25 LPRA sec. 466d.
[3] Véase apéndice del recurso, págs. 1-2.
[4] 32 LPRA Ap. V, R. 23.
[5] Véase apéndice del recurso, págs. 3-8.
[6] Véase apéndice del recurso, págs. 12-15.
[7] Véase apéndice del recurso, págs. 16-24.

con el peticionario porque éste no estaba cometiendo algún delito o infracción de tránsito. Por último, indicó que el testimonio del agente Rodríguez fue uno estereotipado. Por consiguiente, solicitó la supresión de la evidencia ocupada, es decir, la sustancia controlada y el arma de fuego.

Por su parte, el 5 de octubre de 2023, el Ministerio Público presentó *Contestación a moción en solicitud de supresión de evidencia al amparo de la Regla 234 de las de Procedimiento Criminal[8]*. Señaló que la moción de supresión de evidencia presentada por el señor Castillo no cumplía con las exigencias de la Regla 234 de las de Procedimiento Criminal[9]. Sin embargo, alegó que el peticionario no podía "poseer una expectativa razonable de que el Estado no intervendría en el lugar registrado, ya que los hechos ocurrieron en una vía pública, abierta al público, concurrida" y el agente Rodríguez "no actuó ilegalmente al acudir a verificar la aparente condición en que ese encontraba" el peticionario[10]. Asimismo, argumentó que el testimonio del agente Rodríguez fue uno claro, libre de contradicciones, abarcador y preciso, mediante el cual expresó detalles específicos sobre las circunstancias que motivaron la intervención con el peticionario.

Evaluadas las mociones presentadas por ambas partes, el 24 de octubre de 2023, el TPI celebró una *Vista de Supresión de Evidencia.* En dicha vista, el Ministerio Público presentó el testimonio del agente Rodríguez, quien fue contrainterrogado por la defensa del señor Castillo. Igualmente, el Ministerio Público presentó como prueba documental las advertencias Miranda, la prueba de campo y el Inventario de Propiedad Ocupada. Por su

---

[8] Véase apéndice del recurso, págs. 25-32.
[9] 34 LPRA Ap. II, R. 234.
[10] Véase apéndice del recurso, pág. 31.

parte, la defensa presentó como prueba con admisión limitada el Informe de Incidente.

Así las cosas, el 16 de enero de 2024, notificada el 22 de enero de 2024, el TPI emitió *Resolución*[11] en la que declaró no ha lugar la solicitud de supresión de evidencia presentada por la defensa del peticionario. Según se desprende de la *Resolución* recurrida, el agente Rodríguez testificó como sigue:

> [...] Específicamente, del año 2005 al 2019, realizó gestiones como encubierto y, a partir de ese momento, regresó a la División de Drogas de Mayagüez. Para el 23 de septiembre de 2022, trabajaba en el Área Policíaca de Mayagüez, adscrito a dicha división.
>
> El agente interventor continuó declarando que, para dicha fecha, participaba de un Plan de Trabajo Especial por motivo del paso del Huracán Fiona por Puerto Rico, dado lo ocurrido por el paso del fenómeno atmosférico y de que, como resultado, varias áreas carecían del servicio de energía eléctrica. Tomó servicio a las 6:00 am, en un turno de doce (12) horas de duración, dadas las circunstancias previamente aludidas.
>
> [...]
>
> A tales efectos, [el agente] Rodríguez Arocho... señaló que el Teniente Jesús Rodríguez Rodríguez, en unión al Sargento Laboy, establecieron el plan de patrullaje preventivo [...]. Como parte de ello, se le asignó un vehículo rotulado en el que iban el Agte. Sigfredo Arce Izquierdo; conduciendo el vehículo; el Agte. Agdel Torres Román, Rodríguez Arocho y el mismo Tte. Rodríguez. Estuvieron patrullando desde las 7:30 am, aproximadamente, y, a eso de la 1:13 pm, iban por Avenida Corazones, desde la Carretera PR 2, en dirección a Villa Felisa en Mayagüez. Dicha carretera o avenida tiene un área que comprende cuatro (4) señales de Pare [en cuatro (4) direcciones distintas]. Allí, realizaron un viraje hacia la izquierda, hacia el Camino José Bechara.
>
> Rodríguez Arocho indicó que; de ordinario, al hacer ese viraje; en ese camino se encuentra un quisco, o puesto de venta de verduras y viandas a la mano derecha. Sin embargo, en esa ocasión había un vehículo, Tablilla GLK 279, Toyota Corolla, color verde, con sus luces intermitentes (de emergencia) encendiendo y apagando o "flasheando". Dicho auto, estacionado en la carretera. Al pasar por su lado, se percató de que el asiento del conductor estaba reclinado y había un caballero ocupándolo. El vehículo de anterior referencia [quedaba] a su mano derecha y le pasó por el lado muy cerca, a unos cuatro (4) a cinco (5) pies de distancia, aproximadamente, lo que le permitió ver lo previamente aludido.
>
> El agente dijo al testificar que el único ocupante en el interior del carro resultó ser el acusado y que tenía puestas una gorra negra y gafas oscuras, aparentando estar en

---

[11] Véase apéndice del recurso, págs. 47-55.

estado de inconciencia, o dormido, mientras estaba en la vía pública. Acto seguido, le pidió al Agte. Arce que virara más adelante para corroborar estado y circunstancias del caballero que había observado ocupando el vehículo en cuestión.

Luego de desmontarse de la patrulla y dirigirse al auto identificado, [el agente] Rodríguez manifestó que se acercó a la puerta del conductor, lo observó y señaló que estaba en la misma posición y en el mismo estado, como dormido o inconsciente. El agente le tocó bastante fuerte en el cristal de su lado, el cual estaba un poco bajado, unas tres (3) a cinco (5) pulgadas, aproximadamente. Se identificó como la Policía de Puerto Rico, pero [el señor] Castillo no respondió. Entonces, volvió a tocar el cristal con más fuerza y, nuevamente, se identificó como Policía, con voz también más fuerte, y, como resultado, el acusado reaccionó e intentó acomodarse o erguirse en el asiento. En ese momento, el agente interventor percibió un fuerte olor a marihuana que salía del vehículo.

Acto seguido, [el agente] Rodríguez se percató que, en el mismo asiento del conductor, pinchada entre el muslo derecho del ocupante y la consola central, donde se encuentra la palanca de los frenos de mano o de emergencia, había un arma de fuego que tenía las cachas de color negro y era una pistola cromada. Al percatarse del arma, presumiéndola ilegal, el agente dijo que desenfundó su arma de reglamento, más le indicó al acusado que abriera la puerta y se bajara del vehículo.

Tan pronto el acusado se disponía a abrir la puerta para bajarse, [el señor] Castillo le indicó al agente que se iba a poner sus zapatos tenis, toda vez que estaba descalzo. Mientras lo observaba doblarse, o inclinarse hacia el piso, o la alfombra del carro, donde estaba ubicado su calzado, al lado de sus pies, el Agente Rodríguez Arocho notó que había una envoltura de cigarrillo, color marrón, quemada en uno de sus extremos, pero que estaba apagado. El agente expresó que, por su experiencia, dedujo se trataba de un cigarrillo de marihuana. [Asimismo], testificó que, tan pronto se puso los tenis, le verbalizó las advertencias de ley al señor [Castillo] y lo puso bajo arresto.

[…][12]

En virtud de lo anterior, el foro primario concluyó que el testimonio del agente Rodríguez "posee suficientes garantías de confiabilidad y detalles sobre las circunstancias en que llevó a cabo la intervención, el término de su investigación y los resultados obtenidos, dando este Tribunal credibilidad al mismo"[13].

En desacuerdo con la determinación, el 6 de febrero de 2024, el señor Castillo presentó una *Moción en Solicitud de*

---

[12] Véase apéndice del recurso, pág. 48-49.
[13] Véase apéndice del recurso, pág. 54.

*Reconsideración*[14]. En esencia, adujo que el Ministerio Público no presentó prueba suficiente para justificar una intervención sin orden previa. Añadió que del testimonio del agente Rodríguez no surge que se hubiera cometido algún delito en su presencia o tuviera motivos fundados para creer que el señor Castillo había cometido un delito. Por último, señaló que el Ministerio Público nunca manifestó que se tratara de una intervención de emergencia.

El 12 de febrero de 2024, notificada el 14 de febrero de 2024, el TPI emitió una *Resolución*[15], mediante la cual declaró no ha lugar la moción de reconsideración.

Inconforme aún, el 6 de marzo de 2024, el señor Castillo acudió ante nos mediante el recurso de epígrafe, en el cual señaló al TPI la comisión del siguiente error:

> Erró el Tribunal de Primera Instancia al declarar no ha lugar la Moción de Supresión de Evidencia, toda vez que el testimonio del Agente Rodríguez Arocho es uno estereotipado a los fines de justificar lo que fue una intervención, arresto y registro ilegal, violando así el Artículo II, Sec. 10 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico.

Asimismo, el señor Castillo acompañó su *Petición de Certiorari* con una *Moción Solicitando Paralización de los Procedimientos en Auxilio de Jurisdicción*, mediante la cual solicitó la paralización de los procedimientos ante el TPI debido a que el juicio en su fondo está señalado para el 11 de marzo de 2024.

En esta misma fecha, emitimos una *Resolución* en la que concedimos término al peticionario para acreditar haber notificado de forma simultánea copia del recurso de epígrafe y de la moción en auxilio de jurisdicción de conformidad con la Regla 79(E) del Reglamento del Tribunal de Apelaciones[16]. Además, concedimos término a El Pueblo de Puerto Rico, por conducto de la Oficina del

---

[14] Véase apéndice del recurso, págs. 56-62.
[15] Véase apéndice del recurso, págs. 63-64.
[16] 4 LPRA Ap. XXII-B, r. 79(E).

Procurador General de Puerto Rico (Procurador), para expresar su posición.

El 7 de marzo de 2024, el peticionario compareció mediante *Moción Informativa y en Cumplimiento de Orden* en la que acreditó haber notificado copia del recurso de epígrafe y de la moción en auxilio de jurisdicción. En esta misma fecha, el Procurador presentó *Escrito en Cumplimiento de Orden.*

Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver el recurso ante nuestra consideración.

**II.**

**-A-**

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[17]. La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial[18]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[19]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[20].

Con el fin de que podamos ejercer de forma sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones[21], señala los

---

[17] Véase *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).
[18] *Íd.*
[19] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2014); *Negrón v. Srio. de Justicia, supra,* pág. 91.
[20] *Íd.*
[21] 4 LPRA XXII-B, R. 40.

criterios que para ello debemos considerar. Éstos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

**-B-**

La Regla 234 de las de Procedimiento Criminal, *supra*, provee el mecanismo para hacer valer la protección constitucional contra actuaciones irrazonables del Estado bajo la Cuarta Enmienda de la Constitución de Estados Unidos y la Carta de Derechos de nuestra Constitución. Dicha Regla instituye, en lo pertinente, lo siguiente:

> La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla 233 la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:
>
> (a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.
>
> [...][22]

El Tribunal Supremo de Puerto Rico ha establecido que una solicitud de supresión de evidencia deberá exponer "los hechos

---

[22] 34 LPRA Ap. II, R. 234.

precisos o las razones específicas que sostengan el fundamento o fundamentos en que se basa la moción de supresión presentada"[23]. Luego, el Tribunal oirá la prueba y celebrará una vista evidenciaría ante un magistrado distinto al que atenderá el juicio, siempre y cuando haya mediado orden judicial y la parte promovente demuestre que existe una controversia sustancial de hechos que amerite la vista[24]. Si no se demuestra esta controversia sustancial, no es necesaria la celebración de la vista para resolver la moción[25].

La vista de supresión de evidencia no es el "acto del juicio" que contempla nuestro ordenamiento jurídico[26]. No está en controversia la culpabilidad o inocencia del acusado, lo único que tiene que determinarse es la legalidad o razonabilidad del registro realizado[27]. Por lo cual, el quantum de prueba requerido en una vista de supresión de evidencia es el de la preponderancia de la prueba[28].

Por último, es preciso destacar que si bien la determinación de si una actuación gubernamental es razonable --y, por ende, válida-- dependerá de los hechos particulares de cada caso, la adjudicación de una moción de supresión de evidencia no es de naturaleza fáctica. Deberán aquilatarse las cuestiones de hecho, empero, el procedimiento bajo la Regla 234 de Procedimiento Criminal, *supra,* "se refiere a asuntos de derecho que hay que dirimir como paso previo a la admisibilidad de evidencia"[29].

---

[23] *Pueblo v. Serrano Reyes,* 176 DPR 437 DPR (2009); *Pueblo v. Blase Vázquez,* 148 DPR 618, 633 (1999); *Pueblo v. Maldonado, Rosa,* 135 DPR 563, 569 (1994).
[24] 34 LPRA, Ap. II, R. 234.
[25] *Pueblo v. Maldonado, Rosa, supra,* pág. 569.
[26] *Pueblo v. Rivera Rivera,* 117 DPR 283, 289 (1986).
[27] *Íd.*
[28] E. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Colombia, Ed. Forum, 1991, Vol. I, pág. 333.
[29] *Pueblo v. Blase Vázquez, supra,* pág. 633.

**III.**

En el presente recurso, el señor Castillo solicita la revisión de la determinación del TPI, mediante la cual denegó su solicitud de supresión de evidencia. En síntesis, el peticionario alega que la intervención realizada por el agente Rodríguez fue realizada sin una orden judicial previa ni motivos fundados. Por tanto, sostiene que la evidencia ocupada fue obtenida ilegalmente.

Luego de analizar el expediente apelativo, los argumentos de las partes, así como la regrabación de la vista celebrada el 24 de octubre de 2023, a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no encontramos razón por la cual este Foro deba intervenir. Al examinar el proceder del foro primario no identificamos que se haya excedido en el ejercicio de su discreción, actuado de manera arbitraria o errado en la aplicación del derecho. En consecuencia, denegamos la expedición del auto de *certiorari* y declaramos no ha lugar la *Moción Solicitando Paralización de los Procedimientos en Auxilio de Jurisdicción.*

**IV.**

Por los fundamentos que anteceden, **denegamos** la expedición del auto de *certiorari* solicitado y declaramos **no ha lugar** la *Moción Solicitando Paralización de los Procedimientos en Auxilio de Jurisdicción.*

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones